**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ADRIENNE DURSO, et al.,    :
           : Civil Action No. 1:10-cv-02066 (HHK)
   Plaintiffs,    :
           : **JURY TRIAL DEMANDED**
   v.       :
           : **ORAL HEARING REQUESTED**
JANET NAPOLITANO, et al.,   :
           :
   Defendants.    :

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

In an attempt to appear as though it is making air travel safer, the Transportation Security Administration ("TSA") has begun to replace its metal detectors with machines that perform a virtual strip search of passengers. In deciding to use these new machines and developing guidelines for their use, the TSA provided no notice and permitted no input from the public. The decision to avoid any meaningful discussion on the merits of these devices was for good reason: the machines are easily compromised; they expose passengers to radiation; and they effectively strip search passengers who desire to use an airplane as their means of transportation. For passengers who "opt out" of the virtual strip search, the TSA directs its agents to perform an enhanced pat down in which the agent uses his palm and fingers to grope the passenger's entire body, including the passenger's crotch. In essence, passengers must either suffer an impermissible strip search by a machine or be groped by an agent.

Now that passengers have brought claims alleging that the TSA's conduct violates the Fourth Amendment prohibiting unreasonable searches and seizures, the TSA and the Department of Homeland Security ("DHS") argue that their agents' conduct is protected by the TSA's Screening Checkpoint Standard Operating Procedure ("SOP") that was implemented in October

1

2010 ("October SOP") and that, as a result, Plaintiffs are really challenging the October SOP. The Government claims the October SOP is a "final order" and that, pursuant to 49 U.S.C. Section 46110, any challenge to the October SOP must be reviewed as an appeal of an administrative decision. This would essentially create an impermissible deferential standard of review of the October SOP, as the Court of Appeals would only be required to examine the administrative record, which contains only non-public information supplied by the TSA, the very agency whose actions are being challenged.

TSA's and DHS's contention that the October SOP is regulated by Section 46110 fails for multiple reasons. First, the October SOP cannot be considered an "order" within the meaning of Section 46110 because the October SOP is subject to constant change by the TSA, there is not an adequate record, and there was never any notice of the October SOP's creation. Second, Plaintiffs' broad constitutional challenges to the October SOP are exempt from the jurisdictional limitations of Section 46110. Finally, applying the jurisdictional limitations of Section 46110 would deny Plaintiffs due process because there is no guarantee that Plaintiffs would be allowed to present any evidence relating to the unconstitutionality of the October SOP.

## I.      Background

### A.      Security Guidelines

According to Janet Napolitano, in her official capacity as Secretary of Homeland Security, and John Pistole, in his official capacity as Administrator of the TSA (collectively "Defendants"), on September 17, 2010, the TSA issued new guidelines in the form of an SOP to its security officers altering how they screened airport passengers. Defs.' Mot. at 1. According to Defendants, on October 29, 2010, the TSA implemented the October SOP. *Id.* at 4. Based on Defendants' representations regarding the October SOP, it requires TSA agents to use whole body imaging ("WBI") devices for screening passengers, or, if a passenger "opts out" of such

WBI screening, requires the TSA agents to perform an enhanced pat-down. *Id.* at 4-5. The WBI produces a virtual nude image of the traveler, while the enhanced pat-down requires the TSA agent to grope the entire body of the passenger, including the genitals, with the agent's palm and fingers, as opposed to the prior pat-down procedure involving only the back of the agent's hand. Compl. ¶¶ 22-23.

Although the TSA claims that the October SOP exists, the TSA refuses to produce it as the TSA has deemed it Sensitive Security Information ("SSI") pursuant to Section 114(r) and 49 CFR parts 15 and 1520. Defs.' Mot. at 4 n.2. Further, even though the TSA claims that the October SOP is its "final decision directing the use of [WBI] machines," the TSA's own admissions belie that claim. *See id.* at 4. First, the Assistant Administrator for Security Operations for the TSA, Lee R. Kair, has declared that "[t]he SOP is revised as necessary – and often upon short notice …." Lee R. Kair Decl. ¶ 12 (Ex. 1 to Defs.' Mot., hereinafter Kair Decl.). Further, Mr. Kair states that he essentially has *carte blanche* to modify the SOP as he sees fit because he is "responsible for developing, authoring and implementing – and in some cases – approving – TSA's SOPs, including those with regard to [WBI] and the revised pat-down procedures." *See id.* ¶ 9. Lastly, only two weeks after the October SOP was implemented, the TSA altered the October SOP to largely permit pilots to avoid being screened by a WBI device or enhanced pat-down. *See Roberts v. Napolitano*, No. 1:10-cv-01966-HHK, Defs.' Mot. to Dismiss, docket 5, Ex. 1 Decl. Lee R. Kair ¶ 24 (attached hereto as Exhibit A).

**B.**     Lawsuit

Based on the October SOP, as well as the trial program that preceded it, Adrienne Durso, Chris Daniels, and Michelle Nemphos, as parent and next friend of her minor child C.N. (collectively, "Plaintiffs"), were each subject to searches that violated their Fourth Amendment rights. *See* Compl. ¶¶ 1-4, 24-63. As a result, on December 6, 2010, Plaintiffs filed the

Complaint alleging that the actions of the TSA agents violated their Fourth Amendment rights and seeking, *inter alia*, an injunction preventing Defendants from continuing to instruct their agents to enforce the October SOP.  *See id.* at 16.

On February 8, 2011, Defendants filed the instant Motion to Dismiss, arguing that this Court lacks subject matter jurisdiction.[1]  In particular, Defendants assert that because Section 46110 provides exclusive jurisdiction to federal appellate courts when claims relate to security-related "orders" of the TSA, Plaintiffs' claim must be brought in the appropriate court of appeals. In support of this position, Defendants first allege that the October SOP, which they will not permit Plaintiffs to view, was issued by the TSA "'in whole or in part under' Title 49, Subtitle VIII, Part A … thereby falling within the ambit of section 46110."  Defs.' Mot. at 11-12.  Next, Defendants argue that the October SOP is an "order" because it is the "consummation" of TSA's decision making process and it gives rise to legal consequences.  *Id.* at 12-13.  Finally, Defendants claim that even if Plaintiffs are not deemed to have challenged the October SOP, that Plaintiffs' claim is "inescapably intertwined" with the October SOP and, thus, subject to the jurisdictional limitations of Section 46110.  For the reasons set forth below, Defendants are incorrect and this Court maintains jurisdiction over Plaintiffs' claim.

## II.     Standard of Review

When reviewing a motion to dismiss based on subject matter jurisdiction, "[t]he Court must accept as true all of the factual allegations contained in the complaint."  *Youngin's Auto Body v. Dist. of Columbia*, 711 F. Supp. 2d 72, 76 (D.D.C. 2010).

---

[1] Defendants also allude to other unrelated, purported deficiencies in Plaintiffs' Complaint, however, those issues are not properly before this Court and, therefore, Plaintiffs will not address them at this time.

### III.    Argument

#### A.    The October SOP is not an Order Within the Meaning of Section 46110.

As the Defendants agree, 49 U.S.C. Section 46110's jurisdictional limitations do not apply to all actions of the TSA, but only apply to "orders issued by the FAA or TSA concerning air commerce and safety, including aviation security." Defs.' Mot. at 10 (citing *City of Rochester v. Bond*, 603 F.2d 927, 932-35 (D.C. Cir. 1979)).  However, the October SOP cannot be considered an "order" pursuant to Section 46110 for four reasons:  (1) the October SOP is not final; (2) there is not an adequate record; (3) there has not been any notice of the October SOP; and (4) no court has found any SOP to be an "order."

##### 1.    The October SOP is not Final.

Although Defendants label the October SOP as "TSA's final agency decision," Kair Decl. ¶ 11, they present no independent evidence to support this alleged fact.  Defendants have not allowed Plaintiffs or this Court to review the October SOP to determine whether it can be reasonably deemed to be a final "order."  Instead, Defendants maintain the October SOP behind a veil of secrecy.  As a result, the October SOP cannot be fairly deemed to be a final order.

Although the D.C. Circuit has held that as a general principle an "order" should be given an expansive reading under Section 46110, it does not encompass every action of the TSA.  *See Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007).  For an agency action to be an "order" pursuant to Section 46110, the action must be final, meaning that it "must mark the consummation of the agency's decisionmaking process, and it must determine rights or obligations or give rise to legal consequences." *Id.* (internal quotations omitted).  The D.C. Circuit has stated that an agency action is "final" if "[n]othing in the [agency action] indicates that the [agency's] statements and conclusions are tentative, open to further consideration, or

conditional on future agency action." *City of Dania Beach v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007).

Notwithstanding Defendants' refusal to allow a review of the October SOP, Defendants' own conduct and admissions demonstrate that the October SOP cannot be deemed to be a final "order." Indeed, Defendants admit that the October SOP can be "revised as necessary – and often upon short notice." Kair Decl. ¶ 12. On November 12, 2010, less than two weeks after it was implemented, Defendants revised the October SOP to alter the security protocols for pilots. *Roberts v. Napolitano*, Case No. 1:10-cv-1966 (HHK), Defs' Mot. to Dismiss at 6 (dkt. 5) (D.D.C. Feb. 24, 2011). Such rapid and seemingly constant changes to the October SOP by Defendants belie their claim that it is final.

2.    There is not an Adequate Record.

Even if the October SOP could be considered final, it still cannot be found to be an "order" because it does not have an adequate administrative record. As Defendants admit, the October SOP is considered SSI and is promulgated solely by the TSA. As a result, the record supporting the October SOP is composed solely of information supplied by the TSA.

As Defendants recognize, courts, including the D.C. Circuit, have held that an administrative record is necessary for an "order" to be subject to Section 46110. Defs.' Mot. at 15 n.13 (citing *City of Rochester*, 603 F.2d at 932).[2] In addition, Chapter 461 of Title 49 clearly

---

[2] Although Defendants did not cite to *Safe Extensions* as being contrary, it is distinguishable. 509 F.3d 593 (D.C. Cir. 2007). First, in *Safe Extensions*, it was the agency that had made the ruling who was trying to avoid jurisdiction, thereby trying to avoid judicial review of its own order. *Id.* at 599-600. Second, the Court noted various examples where the agency had argued that Section 46110 did not require an adequate record, contradicting its stance in *Safe Extensions*. *Id.* at 600. Lastly, the *Safe Extensions* Court had an adequate record that allowed for public notice and comment, unlike the secret proceedings in our case. *See id.* at 596.

suggests that a record is necessary for the jurisdictional requirement in Section 46110 to apply. In particular, Section 46105 states "[a]n order . . . shall include the *findings of fact* on which the order is based . . . ." (emphasis added). As a result, Congress must have expected that any "order" subject to the exclusive jurisdiction of Section 46110 must have a record.

Further, courts have found that not only does a record have to exist, but it has to be adequate. *City of Rochester*, 603 F.2d at 932; *see also Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993); *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991); *San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 968-69 (9th Cir. 1989). Defendants cite to a Ninth Circuit case for the proposition that even a single letter has been found to create an adequate record. Defs.' Mot. at 15 n.13 (citing *San Diego Air Sports*, 887 F.2d at 969). While a record consisting of "no more than a letter" may be sufficient for review of procedural actions, it is not likely to be adequate for a substantive review like that sought here by Plaintiffs. *See Atorie Air*, 942 F.2d at 960; *see also San Diego Air Sports Ctr., Inc.*, 887 F.2d at 969.

Defendants erroneously argue that the record here is adequate and cite to the index of the administrative record in another case that is currently pending in the D.C. Circuit. Defs.' Mot. at 15 n.3. However, any "record" to which Defendants cite is secret. It has not and cannot be seen by Plaintiffs as Defendants claim all information relating to the October SOP is SSI. Even though the "record" has been filed in the D.C. Circuit case, it has been filed under *ex parte in camera* review; therefore, the Petitioners in that case are also unable to examine the record. A secret record of an SOP that violates the rights of millions of travelers, including Plaintiffs, cannot be held to be adequate for review.

      3.     The October SOP is not an Order Because TSA did not Provide Notice.

Chapter 461 contemplates that any "order" of an agency be preceded by notice to the public.  Where such notice has not occurred, a decision by an agency cannot be deemed to be an "order."  Here, Defendants did not provide notice of the October SOP; rather they deem it to be SSI and Plaintiffs did not know of its existence until after the October SOP had already been implemented and Plaintiffs had already commenced this action.  As a result, the October SOP cannot be deemed to be an "order" pursuant to Section 46110.

When determining the meaning of a statute, a court must analyze "the entire statutory text."  *Samantar v. Yousuf*, 130 S. Ct. 2278, 2286 (2010).  Chapter 461 states that an order "shall be served on the parties to the proceeding and the persons affected by the order."  49 U.S.C. § 46105(b).[3]  While Plaintiffs do not dispute TSA's right to keep certain information secret, the fact that the October SOP has been kept secret, and therefore not served on Plaintiffs as "persons affected by the order," indicates that the October SOP is not an "order" under Section 46110.

Further, Section 46110(a) states that any petition for review filed in the court of appeals "must be filed not later than 60 days after the order is issued."  This requirement clearly contemplates notice of the October SOP's issuance.  In fact, Plaintiffs were not even aware of the October SOP's existence until Defendants filed their Motion and, even now, only the existence, not the contents, of the October SOP is known.

All of the cases cited by Defendants supporting their proposition that the October SOP is an order were situations where the public received prior notice of the order.  *See Safe Extensions*, 509 F.3d at 596-97 (non-final version of order released to public); *City of Dania Beach*, 485 F.3d

---

[3] Section 46105 includes an exemption from service of the order "[w]hen the Administrator is of the opinion that an emergency exists related to safety in air commerce and requires immediate action."  However, Defendants do not argue that the SOP is an emergency order as defined by Section 46105.

at 1184 (order sent to local official); *Village of Bensenville v. FAA*, 457 F.3d 52, 59 (D.C. Cir. 2006) (alleged order released to the public); *Aviators for Safe & Fairer Regulation, Inc. v. FAA*, 221 F.3d 222, 224 (1st Cir. 2000) (order issued to public); *Aerosource, Inc. v. Slater*, 142 F.3d 572, 574 (3d Cir. 1998) (order published pursuant to FAA rules); *Mass. v. U.S. Nuclear Regulatory Comm'n*, 878 F.2d 1516, 1518 (1st Cir. 1989) (order publicly released).

Defendants contend that "numerous courts have recognized" that the October SOP does not have to be publicly available. Defs.' Mot. at 15. However, the two cases cited by Defendants, both of which are from the Ninth Circuit, dealt with security directives, and neither discussed SOPs or any other form of non-public "order." *See Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) ("Therefore, having reviewed the *TSA Security Directive* that requires airline operators to enforce the identification policy, we hold that it is an 'order' within the meaning of § 46110(a).") (emphasis added); *Green v. TSA*, 351 F. Supp. 2d 1119, 1125 (W.D. Wash. 2005) ("The *Security Directives* are 'orders' for the purposes of § 46110(a).") (emphasis added). The Ninth Circuit has recognized this and limited its holdings that notice is not required for orders to situations where the "order" at issue is a security directive. *See Imbrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1256 (9th Cir. 2008) (stating that *Gilmore* was limited to finding that the security directives are orders). As Defendants have admitted in a previous case discussing this October SOP, an SOP is different than a security directive because security directives are approved by an oversight board, whereas an SOP is not and can be "issued on short notice under emergency changes." *Blitz v. Naplitano*, Case No. 10-930 (M.D.N.C. Dec. 10, 2010), Dkt. 10 & 11 (Tr. of Oral Proceeding, at 37-38, attached as Ex. 2 to Defs.' Mot.).

4.     No Court Has Found an SOP to be an Order.

No court has ever held that an SOP is an order. Despite this, Defendants claim there are two cases where courts have found that an SOP is an order. Defs.' Mot. at 17. However, a

review of these cases, which are unreported and not controlling, reveals that the courts did not find an SOP to be an order.

In the first case relied upon by Defendants, *Thomson v. Stone*, the plaintiff was not challenging an SOP; rather, she was challenging whether the procedures established by the SOP were being followed by TSA screeners. No. 05-70825, 2006 WL 770449, at *3 (E.D. Mich. Mar. 27, 2006). The Eastern District of Michigan proceeded to examine various cases that had held that security directives were "orders" under Section 46110. *Id.* at *3-4. The court then concluded that to determine whether the plaintiff's Fourth Amendment rights had been violated, it would have to review not only the SOP at issue, but also the "statutes, regulations, policies, procedures and programs established by the TSA . . . ." *Id.* at *6. The court never stated that the SOP itself was an "order" under Section 46110, and given its expansive view of what would need to be reviewed to determine the plaintiff's cause of action, one cannot read *Thomson* to hold that the court affirmatively found the SOP was an order.[4]

Defendants also cite to *Blitz v. Napolitano* as precedent that an SOP is an order. However, the decision to which Defendants cite was a ruling on a Temporary Restraining Order, and the court did not find definitively that it lacked jurisdiction. Case No. 10-930, Tr. of Oral Proceeding at 55, Def's. Ex. 2 (dkt. 10 & 11) (M.D.N.C. Dec. 10, 2010). Rather, the court held that for the purposes of ruling on the request for the Temporary Restraining Order and the record

---

[4] In the same section Defendants cite to *Thomson*, they also cite to two additional non-controlling cases. Defendants do not try to argue that these cases involved an SOP. These cases are also distinguishable in that both allowed for public notice. *See Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 311 (7th Cir. 1980) ("Approximately nine months before the rule was promulgated, a notice of the proposed amendment and rule making appeared in the Federal Register."); *Zoltanski v. FAA*, 372 F.3d 1195, 1196 (10th Cir. 2004) (reviewing proceeding before an Administrative Law Judge).

before the court, that the October SOP "constitutes an order under Section 46110, at this point, based on the record presently before me . . . ."[5]

**B.** The October SOP is not an Order Because Section 46110 does not Apply to Constitutional Challenges.

Plaintiffs' claim is not subject to the jurisdictional limitations of Section 46110 because Plaintiffs' claim is not inescapably intertwined with Defendants' self-styled "order."

1. The Inescapably Intertwined Doctrine does not Apply Where There is no True Administrative Process.

While courts of appeal have original jurisdiction over certain orders pursuant to Section 46110, they may also have original jurisdiction over "claims that are 'inescapably intertwined' with review of such orders." *Breen v. Peters*, 474 F. Supp. 2d 1, 4 (D.D.C. 2007). As stated by this Court, "[a] claim is inescapably intertwined in this manner if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order." *Id.* (citing *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001)). Whether a court of appeals has authority to hear the claim on direct review depends on "'whether the administrative agency had the authority to decide th[e] issues raised by the claim." *Breen*, 474 F. Supp. 2d at 4 (citing *Merritt*, 245 F.3d at 188 n.9).

This requirement that the agency actually hear or have the opportunity to hear an "inescapably intertwined" claim in order for a court of appeals to have original jurisdiction is appropriate because the court of appeals would then merely be reviewing a fully developed administrative record. As noted by the Ninth Circuit, the "inescapably intertwined" or "collateral attack doctrine prevents plaintiffs from crafting constitutional tort claims either as a

---

[5] Since the filing of Defendants' Motion, Plaintiffs have become aware of a similar proceeding where a court stated that an SOP is an order. *Corbett v. United States*, No. 1:10-cv-24106, Report & Recommendation (dkt. 25) (S.D. Fla. Mar. 2, 2011). This Report and Recommendation was also a TRO proceeding.

means of 'relitigating the merits of the previous administrative proceedings,' or as a way of

evading entirely established administrative procedures." *Americopters, LLC v. FAA*, 441 F.3d

726, 736 (9th Cir. 2006) (citing *Tur v. FAA*, 104 F.3d 290, 292 (9th Cir. 1997)).  This necessarily

presumes that if something is deemed to be "inescapably intertwined" there has already been an

administrative hearing at which all interested parties were given the opportunity to present their

arguments and develop an accurate record.  *See id.*; *see also Tur*, 104 F.3d at 292 (holding that

district court lacked jurisdiction due to Section 46110 because it would merely result in "new

adjudication over the evidence and testimony" already considered by relevant government

agencies).  Thus, if the agency could not have heard the claim, then the claim cannot be said to

be "inescapably intertwined" and subject to review by a court of appeals at the first instance.

Here, Defendants have not reviewed Plaintiffs' claim and, therefore, Plaintiffs' claim

cannot be deemed to be "inescapably intertwined" with the purported "order."  Because

Defendants contend that the contents of the October SOP are deemed to be SSI, at no time was

there any opportunity for Plaintiffs, or anyone from the public, to present to Defendants any

arguments or evidence in relation to the October SOP, or the conduct deriving therefrom.

Rather, the entire process relating to the October SOP was performed without any actual, let

alone possible, input from any person or entity other than Defendants.  As a result, the

"inescapably intertwined" doctrine's purpose of preventing a party from relitigating a claim

already brought before any agency would not be met.  *See Americopters*, 441 F.3d at 736.

> 2.     The Inescapably Intertwined Doctrine does not Apply to Plaintiffs'
>        Broad Constitutional Challenge.

The "inescapably intertwined" doctrine does not apply to broad constitutional challenges

like those brought by Plaintiffs.  As has been recognized, the "inescapably intertwined" doctrine

only applies to claims that are based on individualized issues.  It does not apply to a broad

constitutional claim because such a claim is necessarily not a "re-litigation" of an administrative

hearing.  Rather, a broad constitutional challenge raises issues outside of the administrative

context and requires fact finding by a district court.

As noted by the Ninth Circuit, a claim "may be heard by a district court – if the claim

'constitute[s] a broad challenge to the allegedly unconstitutional actions of the FAA,' and is not a

claim merely 'based on the merits of [an] individual situation.'"  *Americopters*, 441 F.3d at 736

(citing *Mace v. Skinner*, 34 F.3d 854, 858-59 (9th Cir. 1994)).  This constitutional claim

exception to the "inescapably intertwined" doctrine is further explained by the Ninth Circuit's

decision in *Mace*.

Like in *Americopters*, the Ninth Circuit in *Mace* found that, unlike where the plaintiff

merely sought review of the procedure or merits of a FAA order, a district court could maintain

jurisdiction over a claim where the plaintiff alleged a constitutional challenge to an FAA "order."

*See* 34 F.3d at 858.  This ability of the district court to maintain jurisdiction was due, in part, to

the fact that the "administrative record … would have little relevance to [the] constitutional

challenges …."  *See id.* at 859.  Further, the Ninth Circuit noted that a challenge to the

"constitutionality of [an FAA order] should logically take place in the district courts, as such an

examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its

'institutional competence.'"  *See id.*

The constitutional challenge exception to the "inescapably intertwined" doctrine was

upheld four years later in *Crist v. Leippe*.  *See* 138 F.3d 801 (9th Cir. 1998).  In *Crist*, the court

stated that "section 46110 permits jurisdiction in the district court to hear broad constitutional

challenges only where the agency's order did not address those challenges."  138 F.3d at 804.

After determining that the plaintiff had, in fact, brought a constitutional challenge, the court

examined the FAA's purported "order" and noted that it "did not provide a definitive statement of the agency's position on Crist's constitutional challenge, and the board did not come close to developing a record permitting informed judicial evaluation of his challenge." *Crist*, 138 F.3d at 804. The court went on to hold that without a "decision on Crist's [] constitutional claim that an appellate court can review, section 46110 does not preclude jurisdiction in the district court to consider its merits." *Id.* at 804-05.

Finally, in *Merritt v. Shuttle, Inc.*, the Ninth Circuit again upheld the reasoning behind the constitutional challenge exception to the "inescapably intertwined" doctrine. Although in *Merritt* the Ninth Circuit held that the plaintiff's Fifth Amendment claim for violation of his due process rights did not provide a basis for jurisdiction in the district court, the Ninth Circuit reiterated that the constitutional challenge exception applies when there has not been a finding by the FAA regarding the challenged issue. 187 F.3d 263 (2d Cir. 1999). In reaching its holding, the Ninth Circuit noted that the FAA, in promulgating its order to suspend a pilot's license, had undertaken an extensive review of the pilot's history and the incident that triggered the FAA's review of his license status. *See id.* at 265-66. The Ninth Circuit held that the plaintiff's claim of violation of his Fifth Amendment rights was really just a challenge as to how the FAA review board conducted itself during his review process and the review board's ultimate finding. *See id.* at 271. The Ninth Circuit went on to hold that permitting Merritt to bring a claim for a violation of the Fifth Amendment in the district court would merely "result in new adjudication over the evidence and testimony adduced in the [prior revocation] hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ during the course of the proceedings under section 46110." *Id.* As a result, Merritt's claim was deemed to not truly be a

broad based constitutional challenge, but rather just a re-adjudication of the merits of his individual circumstances. *Id.* at 272.

Here, Plaintiffs' claim can only be characterized as broad constitutional challenges. Indeed, Plaintiffs seek to have Defendants' agents cease from violating their Fourth Amendment rights due to an unreasonable search and seizure. Further, Plaintiffs are not seeking to "re-litigate" any issue already presented before Defendants as Defendants never gave Plaintiffs, or any member of the public, an opportunity to present any evidence or argument in relation to the October SOP. As a result, the "inescapably intertwined" doctrine does not apply to Plaintiffs' claim and this Court has jurisdiction to entertain such claims.

**C.**     Application of Section 46110 Violates Plaintiffs' Due Process Rights.

Plaintiffs' claim in this case presents a constitutional challenge to governmental policies that are of great public interest and concern. Rather than having their policies face the scrutiny that Plaintiffs' claim requires, Defendants seek to have this Court apply a jurisdictional statute, which not only was never intended to apply to a constitutional challenge like that brought by Plaintiffs, but which would effectively eviscerate Plaintiffs' ability to argue their claim and vindicate their rights. Given the clear and apparent due process concerns that would result from applying the statute as Defendants seek, this Court should maintain jurisdiction.

1.     Application of Section 46110 Would Effectively Foreclose Meaningful Judicial Review in Violation of the Fifth Amendment.

Statutes granting jurisdiction over certain claims are not to be given any force where the effect of applying such a statute would negatively impact the ability of a party to obtain adequate review of a constitutional claim. Despite this, Defendants seek to have this Court apply the jurisdictional limitations of Section 46110, which would render such an impermissible outcome, thereby violating Plaintiffs' Fifth Amendment rights.

Judicial review provisions that have the practical effect of foreclosing constitutional claims from meaningful judicial review are unconstitutional, and thus reading a jurisdictional statute in such a manner is to be avoided. *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3183, 3149-51 (2010); *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 63-64 (1993); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496-97 (1991). In choosing between the plausible constructions of Section 46110, this Court is "obligated to construe the statute to avoid constitutional questions that would be presented by a broad construction." *United States v. Hersom*, 588 F.3d 60, 67 (1st Cir. 2009). And, where a statute is "susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the court's] duty is to adopt the latter." *Jones v. United States*, 529 U.S. 848, 857 (2000). Because application of Section 46110 as Defendants desire would (at the very least) give rise to such "grave and doubtful constitutional questions," the statute cannot be applied.

In *McNary v. Haitian Refugee Center, Inc.*, a class of immigrants brought suit in district court alleging that the Government's methodology in reviewing applications to a federal amnesty program was arbitrary and violative of applicants' due process rights. 498 U.S. 479 (1991). The Government challenged the district court's jurisdiction on the basis that a statute similar to Section 46110 mandated that the respondent class file suit in the court of appeals. The Supreme Court, in upholding the district court's jurisdiction despite the statutory command, explained that if the respondent class was "not allowed to pursue [its] claims in the District Court, [it] would not as a practical matter be able to obtain meaningful judicial review" because, among other reasons, appellate court review effectively prevents the class from compiling a record, presenting evidence, and putting forward a meaningful case. *Id*. at 496.

As the Court explained, "administrative or judicial review of an agency decision is almost always confined to the record made in the proceeding at the initial decisionmaking level." *Id.*  In *McNary*, the respondents' contribution to this record was minimal; It included program application materials, other evidence of program eligibility furnished by the applicant, and notes taken by government agents during the applicant's interview. *Id.* at 485.  The Court explained that because of the "lack of [interview] recordings or transcripts . . . and the inadequate opportunity for [applicants] to call witnesses or present other evidence . . . the courts of appeals . . . [would] have no complete or meaningful basis upon which to review application determinations." *Id*. at 496.  Because this record does not "address the kind of procedural and constitutional claims respondents bring in this action," *id*. at 493, limiting judicial review would be inappropriate in light of the fact that a court of appeals "would lack the factfinding and record-developing capabilities of a federal district court." *Id*. at 497.  As a result, review of Plaintiffs' claim in the court of appeals would deprive respondents of their due process rights. *See id*. at 497-98; *see also Reno*, 509 U.S. at 63 (holding district court jurisdiction proper where application of statute requiring circuit court review would "effectively exclude an applicant from access [to] administrative and judicial review procedures," including "opportunity to build an administrative record on which judicial review might be based.")

That a due process violation would result from application of Section 46110 here is even more evident than that in *McNary*.  Whereas in *McNary*, the plaintiffs were able to contribute to a record and present *some* evidence in the initial decision-making process, have had no such opportunity.  Rather, the initial decision-making process in the present case was conducted without the Plaintiff's knowledge, let alone participation or input.  Not only were deliberations unilateral, they were secretive.  And not only were deliberations secretive, so too is the decision

reached, according to Defendants.  If the review scheme advocated by the Government in *McNary* – which provided for *some* contribution to the record by respondents – was insufficient and "not meaningful," application of the jurisdictional statute in the current context would be an even more patent and egregious due process violation.

Just as was the case in *McNary*, the record in the present case would not "address the kind of procedural and constitutional claims" at issue in the present dispute.  There, as here, the record established at the initial decision-making process was a wholly inadequate basis for review of the constitutional claims before the court.  Here, Defendants' record will not provide sufficient information to determine whether its security procedures pass Fourth Amendment muster.  *See infra*, Section III(C)(3).  And, even if some relevant information from the secret proceeding is adduced, Defendants cannot seriously maintain that such information will be complete and impartial, although, if Defendants are able to keep their record a mystery at the appellate court, Plaintiffs may never even have the opportunity to demonstrate a bias in the "record."

Defendants' plan of attack is clear:  Force Plaintiffs to bring their claim before the court of appeals; prevent Plaintiffs from adding any information to the "record" or any facts into evidence; and furnish their one-sided "record" for the appellate court to review, if at all, *in camera*.[6]  This in itself effectively forecloses meaningful judicial review, but for yet another

---

[6] Although Defendants may reply by citing a limited number of cases in which courts of appeals have permitted fact-finding (*i.e.*, by sending the issue back to the agency or lower court for review), courts of appeals rarely engage in such discretionary measures.  Defendants are fighting for appellate jurisdiction for the reasons described herein.  It would be disingenuous for Defendants to argue that due process is not violated because Plaintiffs will have ample opportunity to supplement the record, yet then vehemently protest any such attempts in later proceedings.  If Defendants reply that Plaintiffs will indeed have an opportunity for meaningful judicial review including contribution to the record, then surely Defendants will have no problem stipulating to this fact.

reason, application of the statute would obliterate any residual hope for a fair and comprehensive evaluation of the challenged practices.

Section 46110(c) provides that findings of fact by the TSA, if "supported by substantial evidence, are conclusive."  If applied to the case at bar, not only would the Defendants' "record" constitute the sole source of facts for review by the appellate court, but the TSA's factual assertions would be taken at the Defendants' word as long as they are supported by a sufficient quantum of evidence.  Because a deficient factual record cannot be remedied in the court of appeals, *see*, *e.g.*, *Congress & Empire Spring Co. v. Knowlton*, 103 U.S. 49, 61 (1880), a court of appeals must affirm an agency's decision if this evidentiary threshold is satisfied "regardless of what its views might have been had it had the power of fact determination."  *Specht v. Civil Aeronautics Bd.*, 254 F.2d 905, 913 (8th Cir. 1958); *see also North Am. Airlines, Inc. v. Civil Aeronautics Bd.*, 240 F.2d 867, 871-872 (D.C. Cir. 1956).

Application of Section 46110 and its "substantial evidence" standard would essentially tilt the playing field so heavily in Defendants' favor that it would effectively deprive Plaintiffs of meaningful judicial review.  Under the substantial evidence standard, the court of appeals is not to ask whether the record is complete and thorough.  It is not to ask whether the record is neutral and unbiased.  Rather, the only question for a court of appeals is whether "sufficient evidence exists that a reasonable mind might accept as adequate to support a conclusion."  *Aircraft Owners & Pilots Assn. v. FAA*, 600 F.2d 965, 970 (D.C. Cir. 1979).  On this basis then, Defendants could conceivably argue to a court of appeals that whether the "record" is complete or impartial is irrelevant, as long as *its* findings can be supported.

While this standard may be appropriate in instances where parties participate in a prior quasi-judicial proceeding, it has no place here.  The Court of Appeals for the District of

Columbia, among other courts, has recognized that "application of the substantial evidence standard may be troublesome, as well as purposeless, when applied to an informal adjudicatory decision made absent the creation of an adequate record." *Aircraft Owners*, 600 F.2d at 970; *see also Camp v. Pitts*, 411 U.S. 138, 141 (1973); *Tiger Int'l, Inc. v. Civil Aeronautics Bd.*, 554 F.2d 926, 935-36 (9th Cir. 1977).  Absent such a record, a court would likely invariably find for the Government if Section 46110 is applied as Defendants' seek here.  This scheme is clearly incompatible with both common sense and notions of due process.

   2.  Section 46110 is not Meant to Apply in Absence of a True Record.

  Like other jurisdictional statutes relating to decisions of governmental agencies, the jurisdictional limitation in Section 46110 was only contemplated to apply where there had been the equivalent of litigation at the agency level.  Here, the Defendants have refused to reveal any of the information supporting the October SOP or the October SOP itself, let alone allow any public comment on the issue.  In essence, the October SOP is derived solely from the unilateral decision-making and "fact-finding" of Defendants.  Section 46110 was not intended to support exclusive jurisdiction for such a matter as this.

  A review of various statutes like Section 46110 as well as the legislative intent behind them demonstrates that Section 46110 was not intended to apply to cases such as the present one.  The United States Code is replete with provisions similar to Section 46110 that vest jurisdiction to review agency orders in the court of appeals.[7]  The traditional rationales for such restrictions on judicial review are preservation of judicial resources and efficiency of administrative process.  Quite simply, vesting jurisdiction in a court of appeals is a means of eliminating one layer of

---

[7] A partial illustrative list is provided in 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction 2d § 3941 (1992), which cites approximately 60 such provisions.

review in situations where a district court would essentially duplicate the fact-finding already

performed by an agency:

> [A]dministrative agencies . . . perform much the same functions with respect to the courts of appeals as do district courts.  Evidence is heard, a record is prepared and sifted, issues are identified and resolved.  Frequently, indeed, the issues are subject to the further testing of intraagency review on appeal from an administrative law judge or hearing examiner, and resolution by a collegial body.  The questions open for judicial review are commonly questions of law or review of a record for substantial evidence to support the administrative decision – matters as to which a district court would play the same role as a court of appeals.  Review initially by a district court, and then by a court of appeals, would impose added burdens of delay on the administrative process, and of delay and expense on the parties.

16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction

2d § 3940, at 757 (1992).

Were an agency to conduct a quasi-judicial proceeding and then permit appeal to the

district court, the role of the district court would be futile.  The D.C. Circuit, in reviewing an

employee discharge dispute first brought before the Civil Service Commission and then appealed

to the district court before finally landing before the court of appeals, lamented the inefficiency

of such a procedure:

> Duplication, delay, expense and despair for the employee litigant are inherent in such a system.  The interposition of the district court serves, it seems to us, no viable purpose. . . .  The record before us is identical to that [which has already been made at the administrative level and presented to the district court.]

*Polcover v. Sec'y of the Treasury*, 477 F.2d 1223, 1227 (D.C. Cir. 1973).

Where litigants have an opportunity to meaningfully participate in a quasi-judicial

proceeding, original jurisdiction in a court of appeals is sensible.  In fact, nearly all cases

invoking Section 46110 provide for such a proceeding.  The nature of the present dispute,

however, does not give rise to such an opportunity for Plaintiffs.  Because Plaintiffs were never privy to a quasi-judicial hearing in which "evidence [was] heard, a record [was] prepared and sifted, [and] issues [were] identified and resolved," the rationale behind abrogating a district court hearing in such a case is not present.  Moreover, because no quasi-judicial agency proceeding performed the functions of a district court in this case, it follows that a trial court, *i.e.*, this Court, is the appropriate venue for such an action.

Any conclusion to the contrary is entirely at odds with longstanding principles of American jurisprudence.  For more than 200 years, our Supreme Court has recognized that the ability to obtain "remedy for the violation of a vested legal right," which necessarily includes meaningful judicial review, is "[t]he very essence of civil liberty."  *See Marbury v. Madison*, 1 Cranch 137, 162-63 (1803).  This is particularly true where individuals are challenging government action.  As explained by the Supreme Court in *United States v. Nourse*:

> It would excite some surprise if, in a government of laws and principle, furnished with a department whose appropriate duty is to decide questions of right, not only between individuals, but between the government and individuals; a ministerial officer might, at his discretion, issue this powerful process . . . leaving to the debtor no remedy, no appeal to the laws of his country, if he should believe the claim to be unjust.  But this anomaly does not exist; this imputation cannot be cast on the legislature of the United States.

34 U.S. 8, 8-9 (1835).  Were Congress to deny Plaintiffs meaningful judicial review through imposition of a jurisdictional statute, such statutes "would in effect be blank checks drawn to the credit of some administrative officer or board."  S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).  Where, as here, a government agency is attempting to insulate its decisions from constitutional scrutiny, this principle cannot be more evident.

The conclusion that Section 46110 was not intended to apply to this case is further buttressed by the collective weight of the arguments already espoused: the October SOP is not a final order, the statute does not apply to broad constitutional challenges, and court of appeals jurisdiction would prevent meaningful judicial review by granting extremely high deference to an inadequate record developed exclusively by one party.

        3.      District Court Review is Necessary to Ensure Adequate Fact-finding.

The Supreme Court has held that "[i]n cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, *both of fact and law*, necessary to the performance of that supreme function." *Crowell v. Benson*, 285 U.S. 22, 60 (1932) (emphasis added). Because factual determinations are central to evaluating any Fourth Amendment claim, the inability to present evidence would prevent Plaintiffs from demonstrating the unlawfulness of the searches at issue.

In this case, adducing all facts relating to the October SOP is an important part of reaching a resolution to Plaintiffs' constitutional claim. To begin, in reviewing the constitutionality of so-called "administrative searches" such as those at issue in this case, a court must balance the intrusiveness of the search against both the effectiveness of the search and the government's need to conduct it. *Illinois v. Lidster*, 540 U.S. 419, 427 (2004). Yet, under the standard of review in Section 46110, Defendants will have almost total freedom to define the relevant considerations and apportion their weight. For example, whereas trial courts will oftentimes permit parties to introduce public opinion evidence for purposes of determining the "reasonability" of a search, *see*, *e.g.*, *United States v. Albarado*, 495 F.2d 799, 804 (2d Cir. 1974), a court of appeals may not have any more "facts" than what Defendants have already placed in the "record." Without the ability to independently supplement the record with facts

that speak to the intrusiveness, effectiveness and necessity of the government's searches, a court

of appeals would be left to review a one-sided "record."

In this instance, not only would the record be unilateral, but given Defendants' roles as

executive agencies and officers, it would likely be biased. The Supreme Court has recognized

that where national security is involved, executive agencies such as TSA "are not detached,

disinterested, and neutral. . . ." *Katz v. United States*, 389 U.S. 347, 359 (1967). As the Supreme

Court has explained:

> . . . Fourth Amendment freedoms cannot properly be guaranteed if
> domestic security . . . may be conducted solely within the
> discretion of the Executive Branch. The Fourth Amendment does
> not contemplate the executive officers of Government as neutral
> and disinterested magistrates. Their duty and responsibility are to
> enforce the laws, to investigate, and to prosecute. . . . But those
> charged with this investigative and prosecutorial duty should not
> be the sole judges of when to utilize constitutionally sensitive
> means in pursuing their tasks. The historical judgment, which the
> Fourth Amendment accepts, is that *unreviewed executive
> discretion may yield too readily to pressures to . . . overlook
> potential invasions of privacy . . . .*"

*United States v. U.S. Dist. Ct. for East. Dist. of Mich.*, 407 U.S. 297, 316-317 (1972) (emphasis

added). Because Defendants are "not supposed to be neutral and disinterested," *Katz*, 389 U.S.

at 359, it should not be expected that their record would be either.

Courts which have specifically analyzed administrative searches in the airport security

context have provided that such searches are constitutionality permissible provided they are "no

more extensive nor intensive than necessary, in the light of current technology, to detect the

presence of weapons or explosives [and] that it is confined in good faith to that purpose." *United

States v. Aukai*, 497 F.2d 955, 962 (9th Cir. 2007); *see also United States v. Hartwell*, 436 F.3d

174, 180 (3d Cir. 2006); *United States v. Fode Amadou Fofana*, 620 F. Supp. 2d 857, 862 (S.D.

Ohio 2009). Under this more tailored rubric, a trial court would traditionally examine facts

presented by both parties to make a determination.  Among other things, here the court may ask

whether the intrusiveness of Defendants' new procedures can be justified in light of their

effectiveness, evidence about which Plaintiffs are prepared to propound, as is described below.

*See* 73 J. Air L. & Com. 643, 667, n.132, 133 (2008).

Plaintiffs' Fourth Amendment claim cannot be adequately resolved until all evidence is

heard by a tribunal.  This includes evidence that is clearly not in the TSA's record because the

WBI process was not subject to any public scrutiny until *after* it was implemented.  Under

Section 46110, such evidence would likely be inadmissible, despite the fact that it speaks directly

to the considerations required to evaluate the sufficiency of our claim.  A mere sampling of

relevant evidence Plaintiffs are prepared to produce includes:

- Patent documents for WBI scanners which reveal that while metal objects can be easily visualized in the body scanner images, there is "poor detection capability for a wide range of dangerous objects composed of low atomic number elements, such as plastics or ceramics, which are often masked by the low atomic number elements which comprise the human body."  *See* Pam Martens, *Anger Mounts on TSA Body Scanners*, Veteran's Today, Dec. 9, 2010, http://www.veteranstoday.com/-2010/12/09/anger-mounts-on-tsa-body-scanners.  A true and correct copy is attached hereto as Exhibit B.

- A scientific study conducted by the *Journal of Transportation Security* which reveals that "[i]t is very likely that a large, . . . irregularly shaped, cm-thick pancake with beveled edges, taped to the abdomen, would be invisible to [WBI scanners]," and that powder explosives could be hidden without detection between the pancake and the body.  Leon Kaufman & Joseph W. Carlson, *An Evaluation of Airport X-Ray Backscatter Units Based on Image Characteristics*, J. Transp. Secur., November 26, 2010.  A true and correct copy is attached hereto as Exhibit C.

- GAO reports delivered to Congress which reveal that "TSA has not assessed whether there are tactics that terrorists could use, such as the placement of explosives or weapons on specific places on their bodies, to increase the likelihood that the screening equipment would fail to detect the hidden weapons or explosives;" "until the effectiveness of future technologies has been validated, TSA officials cannot be sure that checkpoint security will be improved;" and GAO officials urged TSA to conduct another cost-benefit study before deploying the scanners.  GAO-10-128, October 2009; GAO-10-484T, March 17, 2010.  A true and correct copy is attached hereto as Exhibit D.

- Testimony from various security experts, scientists, political leaders and WBI scanner manufacturers questioning the safety of such scanners and acknowledging that they would probably not detect current explosives used by al-Qaeda, including the failed shoe bomber and underwear bomber devices.  *See, e.g.*, *Airport Body Scanners 'Unlikely' to Foil al-Qaeda*, BBC News, January 4, 2010, http://news.bbc.co.uk/2/hi/uk_news/8439285.stm.   A true and correct copy is attached hereto as Exhibit E.

- Excerpts from the more than 1,000 traveler complaints filed with both the ACLU and TSA regarding enhanced pat-down procedures. Traveler complaints filed with TSA, http://epic.org/privacy/airtravel/backscatter/3-2_Interim_Response.pdf.  A true and correct copy is attached hereto as Exhibit F.  *See also Passengers' Stories of Recent Travel*, ACLU, http://www.aclu.org/passengers-stories-recent-travel.

- A March 15, 2011 report authored by the TSA acknowledging that radiation emission from WBI scanners was ten times higher than previously thought due to a "calculation error" committed during earlier testing.  David Kravetz, *TSA Admits Bungling of Airport Body-Scanner Radiation*, Wired, March 15, 2011, http://www.wired.com/threatlevel/2011/03/tsa-radiation-test-bungling/#.  A true and correct copy is attached hereto as Exhibit G.

Significantly, many of these materials were developed only *after* the TSA issued the September 17, 2010 revised SOP.  While Defendants might arguably contend that their record is impartial, they cannot seriously contend that it is complete.  Where, as here, a constitutional analysis requires a delicate balancing of interests "in light of *current* technology," an arbitrary evidentiary cut-off prevents the Court from considering all factors that should have a bearing on its determination.

## IV.   Conclusion

For the reasons set forth herein, this Court has subject matter jurisdiction over Plaintiffs' claim and Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied.  Additionally, as required by LCvR 7(f), Plaintiffs request an oral hearing.

Dated:  April 5, 2011                              Respectfully submitted,


                                             */s/ John D.V. Ferman*
                                             John D.V. Ferman
                                             DC Bar No. 502520
                                           DRINKER BIDDLE & REATH LLP
                                           1500 K Street, N.W.
                                           Washington, DC  20005
                                           (202) 842-8800
                                           John.Ferman@dbr.com


Of Counsel:                                        Jason P. Gosselin
                                           Bradford Barron
                                           Alexander M. Brodsky
                                           DRINKER BIDDLE & REATH LLP
                                           One Logan Square, Suite 2000
                                           Philadelphia, PA  19103
                                           (215) 988-2700
                                           Jason.Gosselin@dbr.com
                                           Bradford.Barron@dbr.com
                                           Alexander.Brodsky@dbr.com

                                           John W. Whitehead
                                           Doug R. McKusick
                                           THE RUTHERFORD INSTITUTE
                                           Post Office Box 7482
                                           Charlottesville, VA  22906
                                           (434) 978-1789
                                           johnw@rutherford.org
                                         douglasm@rutherford.org

                                         *Counsel for Plaintiffs*
                                         *Adrienne Durso, Chris Daniels, Michelle*
                                         *Nemphos, as parent and next friend of the*
                                         *minor C.N., and C.N., a minor child*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served and will receive notice (NEF) with a copy of this Memorandum of Points and Authority in Opposition to Defendants' Motion to Dismiss via the Court's CM/ECF system per Local Civil Rule 5.4(d)(1).


_____*/s/* John D.V. Ferman_____