## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**ADRIENNE DURSO, et al.,**

   **Plaintiffs,**

 **v.**

**JANET NAPOLITANO, in her official capacity as Secretary of Homeland Security,**

  **and**

**JOHN S. PISTOLE, in his official capacity as Administrator of the Transportation Safety Administration,**

   **Defendants.**

</td><td>

**Civil Action 10-02066  (HHK)**

</td></tr>
</table>

### MEMORANDUM OPINION

Plaintiffs Adrienne Durso, D. Chris Daniels, and Michelle Nemphos (on behalf of her minor child C.N.) bring this action against Secretary of Homeland Security Janet Napolitano and Administrator of the Transportation Safety Administration ("TSA") John S. Pistole, challenging TSA's use of advanced imaging technology ("AIT") and aggressive pat-downs to screen airline passengers at airports. Plaintiffs allege that TSA's use of these measures violates the Fourth Amendment's ban on unreasonable searches and seizures. Before the Court is defendants' motion to dismiss [#5], which argues that, because the challenged screening procedures are employed pursuant to a TSA order, the U.S. courts of appeals have exclusive jurisdiction over plaintiffs' challenge thereto. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted.

# I. BACKGROUND

Following the September 11, 2001, attacks, Congress created TSA "to prevent terrorist attacks and reduce the vulnerability of the United States to terrorism within the nation's transportation networks."  Def.'s Mot. to Dismiss Ex. 1 ("Kair Decl.") ¶ 8.  TSA's responsibilities include civil aviation security.  *See* 49 U.S.C. §§ 114(d)(1), 44901 *et seq*.  To aid in TSA's aviation security mission, Congress has directed the Secretary of Homeland Security to "give a high priority to developing, testing, improving, and deploying, at airport screening checkpoints, equipment that detects nonmetallic, chemical, biological, and radiological weapons, and explosives, in all forms, on individuals and in their personal property."  *Id*. § 44925(a).

TSA's operations are guided in part by Standard Operating Procedures ("SOPs"), which provide "uniform procedures and standards" that TSA must follow.  Kair Decl. ¶ 10.  At issue here is TSA's Screening Checkpoint SOP, which "sets forth in detail the mandatory procedures that [Transportation Security Officers] must apply in screening passengers at all airport checkpoints, and which passengers must follow in order to enter the sterile area of any airport."  Kair Decl. ¶ 10.  The SOP was revised on September 17, 2010 to "direct[] the use of AIT machines as part of TSA's standard security screening procedures, as well as the use of revised procedures for the standard pat-down."  Kair Decl. ¶ 11.  Pursuant to the revised Screening Checkpoint SOP, TSA uses two types of AIT systems: backscatter x-ray machines, and millimeter wave scanners.  Kair Decl. ¶¶ 16–17.  Because the SOP in question contains sensitive security information, it has not been publicly released and is not part of the record before the Court.  *See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 4 n.2.

Each plaintiff alleges that he or she has been required to undergo AIT screening or the

2

revised pat-down procedure at an airport checkpoint.  Durso, who had undergone a mastectomy as part of breast cancer treatment, describes a humiliating and painful patdown in which a TSA agent "repeatedly and forcefully . . . prodded" at her chest.  Compl. ¶¶ 5, 24–36.  Daniels experienced "an aggressive and invasive pat-down of his genitals," an experience exacerbated by a childhood injury.  Compl. ¶¶ 6, 37–54.  And Nemphos asserts that C.N., her twelve-year-old daughter, was pulled out of the security screening line and forced to undergo an AIT scan without the knowledge or consent of her parents and without being given an opportunity to refuse.  Compl. ¶¶ 8, 55–63.  Nemphos alleges that this process violated her family's religious beliefs, by allowing a TSA agent to view an image of C.N.'s naked body, and exposed C.N. to dangerous radiation.  Compl. ¶ 60.  Plaintiffs filed this action on December 6, 2010, alleging that TSA's screening procedures violate the Fourth Amendment's ban on unreasonable searches and seizures.  *See* U.S. Const. amend. IV.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or a claim therein, for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . .").  In response to such a motion, the plaintiff must establish that the Court has subject-matter jurisdiction over the claims in the complaint.  *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008).  If the plaintiff is unable to do so, the Court must dismiss the action.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte*

*McCardle*, 7 U.S. 506, 514 (1868)).  When resolving a motion made under Rule 12(b)(1), a court

may consider material beyond the allegations in the plaintiff's complaint.  *Jerome Stevens*

*Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

### III.  ANALYSIS

Defendants move to dismiss this action on the ground that it challenges a final TSA order

— namely, the Screening Checkpoint SOP — and thus, pursuant to 49 U.S.C. § 46110, falls

within the exclusive jurisdiction of the U.S. courts of appeals.  In relevant part, § 46110 provides

that

> a person disclosing a substantial interest in an order issued by the Secretary of
> Transportation (or the Under Secretary of Transportation for Security with respect to
> security duties and powers designated to be carried out by the Under Secretary . . . )
> . . . may apply for review of the order by filing a petition for review in the United
> States Court of Appeals for the District of Columbia Circuit or in the court of appeals
> of the United States for the circuit in which the person resides or has its principal
> place of business.

49 U.S.C. § 46110(a).[1]  The court of appeals in which such a petition is filed "has exclusive

jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the

Secretary, Under Secretary, or Administrator to conduct further proceedings."  *Id*. § 46110(c).

Defendants contend that this language divests this Court of jurisdiction to adjudicate plaintiffs'

Fourth Amendment claim.

Plaintiffs make a number of responses.  First, they contend that the Screening Checkpoint

SOP is not an "order" that is subject to § 46110.  Second, they argue that § 46110 does not apply

---

[1]      Thanks to TSA's move from the Department of Transportation to the Department
of Homeland Security in 2002, statutory references to the "Under Secretary of Transportation for
Security" are now understood to refer to the TSA Administrator.  *See, e.g.*, *In re Sept. 11 Litig.*,
236 F.R.D. 164, 174 (S.D.N.Y. 2006).

to this case because their constitutional challenge to TSA's procedures is distinct from a

challenge to the SOP.  And third, they contend that forcing them to proceed in a court of appeals

would constitute a denial of due process.  The Court addresses each issue in turn.

**A.**     **The Screening Checkpoint SOP is an Order Subject to § 46110**

Although § 46110 does not define the term "order," the D.C. Circuit has explained what

constitutes an order thereunder:

> To be deemed 'final' and thus reviewable as an order under 49 U.S.C. § 46110, an
> agency disposition 'must mark the consummation of the agency's decisionmaking
> process,' and it 'must determine rights or obligations or give rise to legal
> consequences.'  As a general principle, 'the term order in [section 46110] should be
> read expansively.'

*Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (quoting *City of Dania Beach v.*

*FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007)) (alteration in original) (internal citation omitted);

*see City of Dania Beach*, 485 F.3d at 1188 (holding an agency letter to be a final order where

nothing therein "indicate[d] that the [agency's] statements and conclusions [we]re tentative, open

to further consideration, or conditional on future agency action").

Here, defendants contend that the Screening Checkpoint SOP meets both of these criteria.

It is final, they aver, because it sets forth firm requirements that apply to TSA and airline

passengers alike, with no further agency action required to trigger those requirements.  Likewise,

they contend that it "give[s] rise to legal consequences" because it lays out procedures that

passengers must follow if they wish to gain access to the restricted areas of an airport terminal.

Plaintiffs do not dispute that the SOP gives rise to legal consequences.  They do,

however, assert that the SOP cannot constitute an order for three separate reasons: first, the SOP

is not final; second, the SOP is not supported by an adequate administrative record; and third,

TSA did not provide public notice of the SOP's issuance.  The Court addresses each argument in turn.

### 1.       Finality

Plaintiffs first contend that the Screening Checkpoint SOP cannot be an order reviewable under § 46110 because it is not final.  *See Safe Extensions*, 509 F.3d at 598.  In support of this argument, plaintiffs point to defendants' statement that the SOP can be "revised as necessary — and often upon short notice," Kair Decl. ¶ 12, and to the fact that it has already been revised once since September 2010.  Plaintiffs infer from the SOP's revisability that it is not final.  The Court does not agree.

Simply put, plaintiffs provide no authority for the proposition that an otherwise-authoritative order is not final for the purposes of § 46110 simply because it is subject to revision.  The rule that an order is not final unless it marks the "consummation" of the agency's decisionmaking process does not mean that an order must be set in stone to be considered final; rather, it must have immediate effect.  *See Dania Beach*, 485 F.3d at 1188; *Vill. of Bensenville v. FAA*, 457 F.3d 52, 69 (D.C. Cir. 2006) (holding that an FAA letter was not final because its adverse effect on the petitioners' rights was contingent on future administrative action); *Gilmore v. Gonzales*, 435 F.3d 1125, 1130, 1133 (9th Cir. 2006) (holding a TSA security directive to be a final order because it had a direct and immediate effect, notwithstanding the fact that such directives were "revised frequently, as often as weekly").  Here, it is uncontested that the Screening Checkpoint SOP had immediate effect.  Upon its adoption by TSA, the SOP mandated certain procedures that TSA and air travelers alike were required to follow.  *See* Kair Decl. ¶¶ 10–11.  Accordingly, the Court concludes that the SOP is final.

## 2.      Adequate Record for Review

Plaintiffs next argue that the Screening Checkpoint SOP is not subject to § 46110 because it is not supported by an adequate administrative record. Plaintiffs contend that the language of 49 U.S.C. § 46105 assumes that TSA orders reviewable under § 46110 will be supported by comprehensive administrative records. *See id*. § 46105(b) (stating that "[a]n order of the Secretary, Under Secretary, or Administrator shall include the *findings of fact on which the order is based* and shall be served on the parties to the proceeding and the persons affected by the order." (emphasis added)). Plaintiffs further point to case law suggesting that an adequate record is a prerequisite for review by a court of appeals. *See City of Rochester v. Bond*, 603 F.2d 927, 932 (D.C. Cir. 1979) ("[T]he administrative record compiled by the FAA in the course of its proceedings is adequate for review in the court of appeals, a circumstance we have frequently held to be a principal indicium of 'orders' reviewable within the meaning of direct review statutes . . . ."); *see also Gilmore*, 435 F.3d at 1133 ("The existence of a reviewable administrative record is the determinative element in defining an FAA decision as an 'order' for purposes of Section [46110]." (quoting *Sierra Club v. Skinner*, 885 F.2d 591, 593 (9th Cir. 1989)) (alteration in original) (internal quotation marks omitted)).

As defendants point out, however, the D.C. Circuit rejected plaintiffs' position in *Safe Extensions*. There, the FAA argued that "to qualify as an order, an agency decision must not only be final, but also 'be accompanied by a record sufficient to permit judicial review.'" *Safe Extensions*, 509 F.3d at 598 (quoting the FAA's brief). The court responded: "This argument ignores our cases interpreting section 46110. In both *Dania Beach* and *Bensenville* we held that agency actions are reviewable as orders under section 46110 *so long as they are final* . . . ." *Id*.

7

(citing *Dania Beach*, 485 F.3d at 1187; *Bensenville*, 457 F.3d at 68) (emphasis added).  As explained above, the Screening Checkpoint SOP is final.  Thus, it need not be supported by an administrative record of any particular comprehensiveness to fall within the scope of § 46110.[2]

### 3.      Public Notice

Lastly, plaintiffs contend that the Screening Checkpoint SOP cannot be an agency order reviewable under § 46110 because it was not preceded by public notice.  They argue that because § 46110 requires petitions thereunder to be filed within sixty days of an order's issuance, *see* 49 U.S.C. § 46110(a), the public must be notified of any order's promulgation.  Likewise, they argue that § 46105's requirement that orders include factual findings and be served on affected parties, *see id.* § 46105(b), establishes that public notice is a necessary step.  Defendants respond that plaintiffs misread these provisions.  Defendants are correct.

In *Avia Dynamics, Inc. v. FAA*, 2011 WL 1466330 (D.C. Cir. Apr. 19, 2011), the D.C. Circuit explained that § 46110 and § 46105 do not use the term "order" in the same way; the former's use of the term is broader, "because of its function in providing for judicial review."  *Id.* at *4.  Thus, the fact that § 46105(b) requires "orders" to include factual findings and be served on affected parties does not mean that an agency determination made without those steps is not an "order" for the purposes of  § 46110.  *See id.* (explaining that "informal orders" that are "not subject to the procedural requirements laid out in . . . 49 U.S.C. § 46105(b)" can be reviewable orders under § 46110); *see also Redfern v. Napolitano*, 2011 WL 1750445, at *5 (D. Mass. May

---

[2]      To the extent that *Safe Extensions*'s holding on this point contradicts *City of Rochester* — which is far from clear — the Court must follow the former.  *See IRS. v. FLRA*, 862 F.2d 880, 882 (D.C. Cir. 1988) (recent decisions of D.C. Circuit panels are controlling unless withdrawn or overruled *en banc*), *rev'd on other grounds*, 494 U.S. 922 (1990).

9, 2011) (finding that courts, including the D.C. Circuit, "have rejected [the position] that the term 'order' as used in Section 46110 requires that persons receive notice" (citing *Safe Extensions*, 509 F.3d at 598, 599)).

Likewise, defendants are correct that § 46110's sixty-day deadline for the filing of petitions thereunder does not assume that orders will be *preceded by* public notice.  Because the sixty-day clock does not begin to tick until an order is "issued," 49 U.S.C. § 46110(a), i.e., "made public," a plaintiff has sixty days to file a petition starting on "the date the order is officially made public."  *Avia Dynamics*, 2011 WL 1466330, at *3.  Thus, plaintiffs' concern that an order could take effect and trigger the sixty-day window without anyone knowing, thereby precluding any judicial review thereof, is unfounded: if an order is kept secret, the sixty-day period will be tolled until plaintiffs receive some notice of the order's contents or effect.  *See id.* at *3–4; *Redfern*, 2011 WL 1750445, at *6.  And, as defendants observe, the *Avia Dynamics* court held that "the sixty-day deadline [in § 46110] does not constitute a jurisdictional bar."  2011 WL 1466330, at *3.  That holding further bolsters the conclusion that the sixty-day deadline does not affect the jurisdictional boundaries drawn in the other provisions of § 46110.  *See id*. Accordingly, the Court concludes that TSA's failure to provide public notice of the Screening Checkpoint SOP or its contents prior to its effective date does not prevent the SOP from being an order under § 46110.

## B.      Plaintiffs' Claim is Inescapably Intertwined with a Review of the SOP

For the foregoing reasons, the Court concludes that the Screening Checkpoint SOP is an "order" in the meaning of § 46110.[3]  Thus, the Court must next consider whether plaintiffs' Fourth Amendment claim is inescapably intertwined with review of that order.  The awkwardly named inescapable-intertwinement doctrine gives the courts of appeals jurisdiction over not only direct challenges to final agency orders but also any claims inescapably intertwined with the review of those orders.  *See Breen v. Peters*, 474 F. Supp. 2d 1, 4 (D.D.C. 2007) (citing *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001)); *see also Beins v. United States*, 695 F.2d 591, 597–98 & n.11 (D.C. Cir. 1982).[4]  The doctrine serves to prevent plaintiffs from collaterally attacking agency proceedings by presenting ostensibly independent claims.  *See Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006).  In the inescapable-intertwinement inquiry, a "critical point" is whether review of the order by a court of appeals would allow for adjudication of the plaintiff's claims and could result in the relief that the plaintiff requests.  *Breen*, 474 F.

---

[3]      Other courts have reached the same conclusion as to this SOP, s*ee Redfern*, 2011 WL 1750445, at *6, and as to similar TSA orders.  *See Gilmore*, 435 F.3d at 1133; *Scherfen v. U.S. Dep't of Homeland Sec.*, 2010 WL 456784, at *10–11 (M.D. Pa. Feb. 2, 2010); *Tooley v. Bush*, 2006 WL 3783142, at *26 (D.D.C. Dec. 21, 2006), *rev'd in part on other grounds*, *Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009), *rev'd on rehearing*, 586 F.3d 1006 (D.C. Cir. 2009); *Green v. TSA*, 351 F. Supp. 2d 1119, 1125 (W.D. Wash. 2005).

[4]      The inescapable-intertwinement doctrine applies only where a claim does not directly challenge the order in question; if it does, intertwinement is a moot point because § 46110 clearly applies.  Here, defendants argue that plaintiffs' claim presents such a direct challenge, but offer no authority to support that proposition; plaintiffs merely assume that their claim is not a direct challenge without saying so, or why.  Regardless, the Court need not determine whether plaintiffs' claim is actually a direct challenge because that claim is inescapably intertwined with review of the screening procedure SOP.  *Cf. Redfern*, 2011 WL 1750445, at *6 (to the extent that the plaintiffs' claims arose from the SOP but did not challenge it directly, those claims were inescapably intertwined).

Supp. 2d at 5 (citing *Beins*, 695 F.2d at 598 n.11); *see also Merritt*, 245 F.3d at 187 ("A claim is inescapably intertwined . . . if it alleges that the plaintiff was injured by [the] order and that the court of appeals has authority to hear the claim on direct review of the agency order.").

Here, defendants contend that plaintiffs' Fourth Amendment claim is inescapably intertwined with a review of the SOP because the injuries that plaintiffs assert — their allegedly unconstitutional scans and pat-downs — were caused by the SOP. Defendants further argue that review in the court of appeals is appropriate because that court would be able to hear and rule on plaintiffs' constitutional argument, and could provide the relief that plaintiffs seek, i.e., the termination of TSA's current screening procedures.[5]

Defendants are correct that a court of appeals could, in ruling on a § 46110 petition challenging the SOP, decide whether TSA's screening procedures are consistent with the Fourth Amendment. *See, e.g.*, *Gilmore*, 435 F.3d at 1135–39 (reaching the merits of the plaintiff's constitutional claims, including his Fourth Amendment claim, on § 46110 review). But defendants' argument that the court of appeals could give plaintiffs the relief they seek elides the distinction between the remedy sought by plaintiffs — a permanent injunction barring the use of AIT scanners or enhanced pat-downs as a primary means of screening air travelers — and the

---

[5] Defendants assert correctly that plaintiffs' damages claims should not be part of the Court's inescapable-intertwinement analysis because they are barred by sovereign immunity. *See Hamrick v. Brusseau*, 80 F. App'x 116, 116 (D.C. Cir. 2003) ("[T]he United States has not waived sovereign immunity with respect to actions for damages based on violations of constitutional rights by federal officials, whether brought against the United States directly, or against officers sued in their official capacities." (citing *Clark v. Library of Cong.*, 750 F.2d 89, 103 n.31 (D.C. Cir. 1984); *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982)) (internal citations omitted)); *Beins*, 695 F.2d at 598 n.11 (distinguishing *City of Rochester* on the ground that court of appeals review could not result in an award of damages, which was sought by the *Beins* plaintiff).

relief that the court of appeals can provide: "affirm[ing], amend[ing], modify[ing], or set[ting] aside any part of" the SOP.  49 U.S.C. § 46110(c).  If plaintiffs prevailed before the court of appeals, the screening SOP would be modified or set aside; if plaintiffs prevailed before this Court, they would earn an injunction prohibiting TSA from employing the practices challenged by plaintiffs, on pain of contempt.  *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 600 n.5 (1984) ("An enjoined party is required to obey an injunction issued by a federal court within its jurisdiction . . . and failure to obey such an injunction is punishable by contempt.").  This difference is not trivial.[6]

The question remains, however, whether this distinction is sufficient to place this case beyond the reach of the inescapable-intertwinement doctrine.  The Court concludes that it is not. A basic purpose of the doctrine is to prevent plaintiffs from avoiding special review statutes through creative pleading.  *See Americopters*, 441 F.3d at 736; *United Transp. Union v. Norfolk & W. Ry. Co.*, 822 F.2d 1114, 1120 (D.C. Cir. 1987).  If a plaintiff could proceed in the district court merely by asking for an injunction barring the agency from taking the action required by the order in question, then that purpose would be defeated.  Thus, the Court concludes that this case fits the basic criteria for inescapable intertwinement: the court of appeals could hear plaintiffs' constitutional claim, and could remedy the injury they allege by setting aside or modifying the SOP.

Plaintiffs allege, however, that the doctrine does not apply to their claim for two further reasons: first, because there has been no true administrative process here, merely unilateral

---

[6]     The Court does not mean to suggest that, if the court of appeals held TSA's screening practices to be unconstitutional, TSA would flout that judgment by reinstituting those practices, under a new SOP or otherwise.

agency action.  This argument is based on a pair of Ninth Circuit cases in which that court

explained that the inescapable-intertwinement doctrine is intended in part to prevent plaintiffs

from "crafting constitutional tort claims either as a means of 'relitigat[ing] the merits of the

previous administrative proceedings,' or as a way of evading entirely established administrative

procedures." *Americopters*, 441 F.3d at 736 (quoting *Tur v. FAA*, 104 F.3d 290, 292 (9th Cir.

1997)) (alteration in original) (internal citation omitted).  Plaintiffs argue that, because there were

no "previous administrative proceedings" here, they cannot be attempting to relitigate anything

and thus the doctrine should not apply.  But, as defendants observe, the Ninth Circuit

subsequently held in *Gilmore* that the plaintiff's claims were "'inescapably intertwined' with a

review of the order" in question, apparently untroubled by the fact that, as here, there had been

no administrative process.  *See Gilmore*, 435 F.3d at 1133 n.9.  Moreover, avoiding relitigation

of agency proceedings is not the only purpose of the doctrine; the D.C. Circuit has explained that

a prime rationale therefor is that "coherence and economy are best served if all suits pertaining to

designated agency decisions are segregated in particular courts."  *City of Rochester*, 603 F.2d at

936.  Those goals are served by exclusive jurisdiction in the courts of appeals, regardless of

whether there has been an administrative process.

   Second, plaintiffs contend that the inescapable-intertwinement doctrine does not apply to

broad constitutional challenges, as opposed to claims focusing on individual agency decisions or

adjudications.  Plaintiffs again rely on the Ninth Circuit's decision in *Americopters*, but again

their position is contradicted by the later decision in *Gilmore*, where the court found that the

plaintiff's claims were inescapably intertwined even though those claims were, like plaintiffs'

Fourth Amendment claim here, broad constitutional challenges to airport security measures.  *See*

*Gilmore*, 435 F.3d at 1133 n.9, 1135–39.  Further, *Americopters* itself said that broad

constitutional challenges are not inescapably intertwined *if they seek damages*.  *Americopters*,

441 F.3d at 736.  As noted, *see supra* note 5, that is not the case here.  Thus, plaintiffs' argument

that broad constitutional challenges are categorically exempt from intertwinement analysis is

without support.[7]

        In sum: plaintiffs' constitutional claim is inescapably intertwined with a review of the

Screening Checkpoint SOP because a court of appeals reviewing the SOP could rule on that

claim and could, by setting aside or modifying the SOP, provide approximately the remedy that

plaintiffs request.  Neither of the putative exceptions to the intertwinement doctrine proffered by

plaintiffs is supported by authority.  Thus, pursuant to that doctrine, plaintiffs' claim must

proceed before the court of appeals.

## C.      Application of § 46110 Would Not Offend Due Process

        In a final effort to save this Court's jurisdiction over their case, plaintiffs argue that an

application of § 46110's jurisdictional bar (either directly or via the inescapable-intertwinement

doctrine) would violate their Fifth Amendment due process rights by foreclosing meaningful

judicial review of TSA's screening procedures.  This is so, plaintiffs contend, for two reasons.

First, the record before the court of appeals would consist solely of materials produced by TSA,

and would not be geared to address a constitutional challenge to TSA's procedures.  Second,

---

        [7]      Contrary to plaintiffs' assertions, the Second Circuit's first decision in *Merritt v. Shuttle, Inc.*, 187 F.3d 263 (2d Cir. 1999) — which plaintiffs mistakenly attribute to the Ninth Circuit — does not confirm that a constitutional-challenge exception to the intertwinement doctrine exists.  Rather, that court said: "We *need not decide* whether a broad-based, facial constitutional attack on an FAA policy or procedure — in contrast to a complaint about the agency's particular actions in a specific case — might constitute appropriate subject matter for a stand-alone federal suit."  *Id*. at 271 (emphasis added).

§ 46110 provides that agency findings of fact, "if supported by substantial evidence, are

conclusive." 49 U.S.C. § 46110(c). Plaintiffs assert that these factors combine to "tilt the

playing field so heavily in Defendants' favor that it would effectively deprive Plaintiffs of

meaningful judicial review." Pls.' Opp'n at 19.

There are two problems with plaintiffs' due process argument. First, the cases on which

plaintiffs rely do not stand for the proposition that special review statutes like § 46110 can effect

a denial of due process by channeling cases directly into the courts of appeals. Plaintiffs rely

primarily on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), in which the

Supreme Court held that a special review provision of the Immigration and Nationality Act did

not preclude district court jurisdiction over a procedural due process challenge to the

Immigration and Naturalization Service's administration of an unlawful-immigrant amnesty

program. *See id.* at 483, 494. But *McNary*'s holding was statutory, not constitutional: the Court

explained that the language of the provision in question did not reveal a congressional intent to

restrict the type of claim at issue. *See id.* at 494; *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 126

(D.C. Cir. 2010) (stating that *McNary*'s holding "rested entirely on the Court's analysis of the

jurisdictional provision's text"). Similarly, the cases that plaintiffs cite in attacking § 46110's

substantial-evidence standard were not constitutional decisions. *See Aircraft Owners & Pilots

Ass'n v. FAA*, 600 F.2d 965, 970 (D.C. Cir. 1979).[8]

Second, and more fundamentally, plaintiffs' due process arguments would not, even if

---

[8]        The Court does not suggest that Congress is free to restrict judicial review of
constitutional challenges to agency action however it sees fit; a "'serious constitutional question'
. . . would arise if an agency statute were construed to preclude all judicial review of a
constitutional claim." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 n.20 (1994) (quoting
*Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986)).

correct, be sufficient to allow this Court to retain jurisdiction over their case.  As plaintiffs

concede, a court of appeals reviewing an agency determination has the authority to supplement

the record.  *See* 28 U.S.C. § 2347(c) (providing that, upon a proper showing, a court of appeals

reviewing agency action "may order . . . additional evidence" to be accepted by the agency and

filed with the reviewing court); *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir.

2008) (noting exceptions to the usual administrative-record-only rule).  Thus, a court of appeals

reviewing the SOP would be capable of addressing plaintiffs' concerns that TSA's administrative

record will be incomplete or one-sided.[9]

Likewise, plaintiffs' arguments regarding the standard of review are properly directed to

the reviewing court of appeals.  In *Aircraft Owners*, one of the parties objected to the application

of the substantial-evidence standard, which was mandated by a special review statute similar to

§ 46110.  *See* 600 F.2d at 969–72.  The D.C. Circuit carefully considered whether applying the

standard would be appropriate under the circumstances.  *See id*.  There is no reason to believe

that it could not do the same before ruling on a petition challenging the Screening Checkpoint

SOP.[10]  Thus, plaintiffs' due process arguments, even if adequately supported by authority, would

not be sufficient to save this Court's jurisdiction over their case.[11]

---

[9]      Plaintiffs protest that courts of appeals "rarely" permit a party to supplement the
administrative record, but the fact remains that such measures are allowed upon a proper
showing.

[10]      Moreover, the substantial-evidence standard is contained in § 46110(c) and is
separate from the jurisdictional language in § 46110(a).  Thus, even if application of the
substantial-evidence standard were somehow unconstitutional, this Court would still lack
jurisdiction to hear plaintiffs' Fourth Amendment claim.

[11]      The Court does not further address plaintiffs' assertions (which are ostensibly part
of their due process argument) that § 46110 is not meant to apply in the absence of a true record

**IV.  CONCLUSION**

TSA's Screening Checkpoint SOP is an "order" in the meaning of 49 U.S.C. § 46110.

Because plaintiffs' Fourth Amendment claim is inescapably intertwined with a review of that

order, and because an application of § 46110's jurisdictional bar to that claim would present no

due process problem, defendants' motion to dismiss must be granted.  An appropriate order

accompanies this memorandum opinion.

Henry H. Kennedy, Jr.<br>
United States District Judge

---

and that district court review is necessary to ensure adequate fact-finding because those
arguments simply retread the claims discussed here and above.

17